Good morning. May it please the Court, David Goodwin Covington and Berling on behalf of the appellants, the Goldbergs. I'd like to start with the summary judgment ruling on bad faith because that's the hinge on which the entire events below turn. The district court, in its opinion, recites 24 facts, all of which presumably are material or they wouldn't be in the opinion, that the Goldbergs had controverted with evidence in the record below by way of just a few examples. The district court found that Chubb had, quote, adopted an if-in-doubt rip-it-out approach, end quote, to remediation of the urine odor damage at the Goldbergs' residence. But the Goldbergs submitted evidence that Chubb conducted no remediation after November 2003, 15 months, 14 months before it denied coverage. And further, that Chubb had refused to conduct remediation activities that his own consultants had recommended. The district court further found that Chubb did not use dogs to investigate the urine odors because Chubb had properly concluded they wouldn't be useful. But the record also had substantial evidence. Well, didn't your expert also agree that they wouldn't be useful? I think that is true, but the Chubb's expert said that it would be useful. And the Goldbergs introduced their analysis. The issue here is whether a reasonable jury could find that they were unreasonable in acting, and they acted in bad faith. My biggest problem with your case is that on the objective tests, okay, they offered you the opportunity to come up with your own tests, recommend other tests, and you were not able to offer anything more than what they did. And they seemed to have offered for the tests they did not conduct, my recollection was that your expert agreed that they wouldn't have been productive. Your Honor, I don't think that that fairly characterizes the record. Don't tell me why. Okay, let me go into a little more detail. First of all, Chubb is the expert in detecting physical loss and in explaining what to do about it. Chubb hired their own experts to look into the loss, and their experts came to the conclusion that various items of testing were necessary, various items of remediation were necessary. So if we're on summary judgment, at trial, Chubb can do whatever it wants by saying, look, your experts say this, our experts say that. But on summary judgment, we have a fact dispute. We have Chubb's own experts recommending investigative tools that Chubb did not use. Now, if your Honor were to take a look at Chubb's description. It's a very long record, and I think I did take a pretty close look. And I'm having a lot of problems because I don't quite understand why they're acting in bad faith if they ultimately reject a test, which at some point might have been recommended, but for various reasons they didn't go forward with. And your experts sort of agreed that it wouldn't have been useful. Well, let me go back to the basic issue. Chubb denied coverage in January 2005 on the ground that the home no longer had or never had a urine odor problem. That was their denial of coverage. That means under Arizona law, there were two things that Chubb had to prove that there was no genuine issue of material fact about. One, that the basis for denying coverage was correct, was reasonable. And two, that the investigation from start to finish was reasonable. And we urged the court to take a look at the Goldberg's comprehensive statement of facts, particularly 71 onward, which can be found at page 345 of the excerpt of record. Now, as to the first issue, that Chubb had to prove it acted in good faith in concluding that there was no odor problem, the record included Chubb's binding judicial admissions in the complaint it filed in state court. Those were made at a very different time period. So it's unclear to me that that sheds any light at all. Your Honor, they were made in 2005. The complaint was filed on April 30, 2004. Chubb conducted no remediation activities in the house between April 30, 2004. Yeah, but it did some investigating. It looked the record is that Chubb on. There still was not any problem. Your Honor, the record reflects that Chubb investigated looking to determine whether an excluded cause such as mold was the cause of the loss, not investigation of the cause of the urine odor. But the spin on it that they were looking to see whether excluded costs were, excluded causes were, they were looking, based on the record that I've read, to see what in the world could be causing it. I mean. And, Your Honor, we're. Basically, at that point in time, there simply wasn't any basis for believing that there still was an odor issue. Avoids by urine. Exactly. All right. This is an all-risk policy. Yes. That means that if there is a risk of physical loss, which would include an odor problem, Chubb has a duty to either repair or replace the residence. Spent about $300,000 on remediation, and it spent $1.8 million on living expenses. And it did every test that apparently was reasonable to do, at least that your expert agreed with. So what more is it supposed to do in order to demonstrate that in good faith it is accepted and considered the claim? Your Honor, on the record here, at the time Chubb denied coverage, one, we still had Chubb's state court complaint, which was pending. It had not been dismissed. And Chubb admitted, and it was a binding judicial admission under this circuit's precedent, things like, quote, one or more employees of Lee Gardner. Essentially, it was a claim over, a protective claim over, wasn't it? Your Honor, it's a. . . You know, you have to protect yourself. That's not a judicial admission in any meaningful sense. Well, under Sycorps v. Cetus 51F3rd at page 860 and other cases in this circuit, Your Honor, a statement in a complaint, if not amended or otherwise clarified by another pleading, is a binding admission. But even if it's not a binding admission, at a minimum, for purposes of summary judgment, it's an evidentiary admission. And the admissions include the following. Quote, there was extensive damage to the El Morro home due to urination by workers in the attic. End quote. Quote, the smell of urine persisted in the El Morro home. End quote. Quote, the odor of urine has permeated the El Morro home. End quote. Now, as to the investigation, the record had evidence that Chubb refused to conduct remediation, excuse me, investigative activities on the ground that they would tip the claim or they would tip the scales position-wide in a legal action. That's at Excerpt of Record 373 to 374. At Excerpt of Record 368 to 70, there's evidence that Chubb refused to perform remediation activities that his own consultant recommended. There's at Excerpt of Record 389 to 90, there's evidence that Chubb conducted tests that it knew would be inconclusive because it knew that scientific testing could not detect old urine odor. And then Chubb focused. To do tests in bad faith? To do in Arizona where an insurer can be independently liable in bad faith for failure to conduct. Not performing a test that they knew wouldn't. No, Your Honor, for performing tests and then basing its denial of coverage on those tests where Chubb knew that the result would be inconclusive. In addition, at Excerpt of Record 393 to 396 and 413, there's evidence that Chubb lied to its consultants. For example, it told William Kane that there was de minimis urine in the house. Only one cup of urine had been spilled. And also told William Kane that there had been a water spill of thousands of gallons in 2001 when, in fact, the water spill was 300 gallons and was vacuumed up promptly. And then relied on that consultant's report in concluding that there was no urine problem in the house. Chubb told the Goldbergs to move out of the house so it could perform remediation activities and repair the damage, and instead it did not. The only thing it did was to try to find an excluded cause. That's at Excerpt of Record 369 to 71. Chubb said it wouldn't pay the claim unless the Goldbergs identified or Chubb could identify the cause of the loss. But as I mentioned, under an all-risks policy, the cause of the loss is irrelevant except for an exclusion. The insurance policy provides that if there's physical loss, Chubb must repair the loss or replace the house. At the time of the denial of coverage, there were still odors. There were 34 witness statements and then nine interviews from Chubb, all on the record on summary judgment documenting foul odors in the house. They were still there, and yet Chubb did not repair the damage, and it did not replace the house. There was a bad-faith expert, Thomas Corridan, who had 37 years of experience in claims handling, had testified as an expert witness on dozens of occasions. He reviewed the evidence and concluded that Chubb had acted in bad faith. In this circuit, and I'm quoting for Southland Sod Farms, 108F3rd at 1144, quote, as a general rule, summary judgment is inappropriate where an expert's testimony supports the non-moving party's case, end quote. On top of that, there was evidence in the record at Excerpt of Record 392-99 and 419-21 that after denying coverage, Chubb assisted. Excuse me. This record is quite long, and I'm trying to keep all the facts in mind. But the argument about the raise and rebuild on the bad-faith claim, you didn't raise this argument, in my recollection of the record. Which that the remedy was to the policy language provides that. When on the motion for summary judgment, you didn't raise the argument that essentially the raise and rebuild provision controlled. Maybe I'm wrong, but that is my recollection. I believe that's incorrect, Your Honor, and I think the part of the discussion that's most likely to concern it is either at Excerpt of Record 424-28 or else in the early facts in the Excerpt of Record in the discussion of Jeffrey McKinley, who is another expert. I should add, Your Honor, after Chubb denied coverage, it then assisted counsel for the plaintiff, excuse me, for the defendant in the subrogation action. You know, this is a very complicated record, and it's one thing to make arguments, but I'm having a little trouble on it. My reading of the record is that nowhere in your opposition did you argue that the insurance companies refused to raise and rebuild the El Moro house was not fairly debatable. Your Honor, if you're talking about in the opposition to the summary judgment motion. Yes, that's what I thought of. However, it was set forth in the comprehensive statement of facts. Now, this is an issue that is a serious problem with the summary judgment ruling. In the District of Arizona. Even if the district court didn't and should have considered those 400-plus statements of fact, that doesn't substitute for the failure to argue something. I mean, the district court isn't supposed to be clairvoyant and understand from those 404 or whatever it was plus statements what argument you might have made if you had deemed to make one. Your Honor, that was a factual failing in Chubb's denial of coverage, and it was set forth in the statement of facts. It's one of the items of evidence of Chubb's bad faith. And in the District of Arizona, as in most districts in this circuit, a party opposing a motion for summary judgment is supposed to prepare a statement of what it believes. As I said, even assuming the district court should have considered them, it didn't. Even so, you've got to have some argument to show why one of those 400-plus statements was a triable issue. Your Honor, there was obviously a truncated argument in the opposition brief. There's 17 pages. There's four issues to cover. One can't cover every point. But the reason for having a separate statement of disputed facts, of facts on which there's a genuine issue, is for the district court to figure out which facts are material and whether there's a dispute over them. If this goes without help, we'd love to say judges aren't pigs going on truffle hunts. Well, the reason why one has the separate statement of facts is to help the judge. And I realize the one in this trial, with this trial court, was a very big fact statement. But that's because there were many disputed issues of material fact at trial. I would like to reserve a little bit of time for rebuttal, but I would like to mention the Attorney's Fee Award. Because the Goldbergs not only lost their home and lost their case, but they also were ordered to pay what was, as far as anyone can tell, the largest fee award ever imposed on an individual in Arizona, more than $3 million. They instituted meritorious good faith litigation to see compensation under this masterpiece policy for the loss of their home. They can't use their home. And no basis exists for imposing punishment on top of injury. Even the district court acknowledged that the Goldbergs claim had merit. The Goldbergs introduced evidence that a fee award of this type would have a chilling effect on other litigation. The Arizona statute allows for attorney's fees, and the merit is only one factor. So the district court weighs those six factors. And the district court for sure said, well, I can't say that the claims were frivolous. That is, they may have had merit, but they were all losers, and went on to find the other five claims. So why is it an abuse of discretion? It's an abuse of discretion because it will have a substantial evidence in the record in the trial court was it will have a substantial chilling effect on other litigants if litigants present a meritorious homeowner's claim and then end up paying a massive fee award to the insurance company when they end up losing. I'd like to reserve the rest of my time. May it please the Court. Robert Traylor on behalf of Pacific Indemnity and Federal Insurance. If it's appropriate, I'd like to reserve two minutes for my cross appeal. Go ahead. If I were you, it would be all right. Okay. I'll do that then. Thank you, Your Honor. Putting aside for a minute the four issues on appeal, there really are two overarching issues in this case. The Goldbergs pleaded this case, developed it in pretrial proceedings, and tried this case on the basis that this house had massive urine problems which necessitated a singular and sole demanded remedy to raise and rebuild the house. The evidence throughout the pretrial proceedings and at trial showed that those factual premises were false. There was no urine in this house, and there was no basis, no factual basis to raise and rebuild the house. No urine in the house. Is that a slight overstatement? The evidence of urine in this house is twofold. One, a spot about three by three or four by four in some drywall, and a singular spill of cup that hit above an attic entrance and leaked out of a register of the floor, both of which were remediated in full, and we spent $692,000 on remediation. The only other evidence of urine was a bottle that contained some urine that sat there for two and a half years. It was capped and fluoresced and showed no evidence that any urine escaped that bottle. That was tested using the testing methods by the serological labs or seri, which proved efficacious for degraded urine because two and a half, perhaps three years passed, tested it and it would prove positive for urine, as did that spot of drywall I referenced. That was the entirety of the urine evidence in this house. All of it existed pre-remediation. There was no evidence of urine in this house post-remediation. So failing factual support for their two critical elements of their case, they have fundamentally rejiggered their case on appeal. And now they say it's about odors alone. The evidence there, they claim in their briefs that there was no dispute as to the fact that there were odors in this house. There's no dispute that a few people, some people, said there were odors. But the trial evidence was substantially that there were not odors in this house. And we've set forth that evidence at pages 16 through 20 of our reply brief, our response brief. The second critical portion on which they are relying for purposes of appeal is their judicial mission notion. It was discussed briefly here before. They assert that our subrogation joinder of their state court complaint against the contractors, the alleged malfeasors, constitutes a judicial admission. And they rely upon that judicial admission, claim judicial admission, at all points, at all issues in their appeal. But under this court's cases such as Sycor, American Title V Lace Law, as well as other persuasive authorities such as the Fifth Circuit, Hardy, Continental Insurance, all of which have been cited in our briefs, that joinder, which subsequently withdrawn, in which they admitted it was withdrawn, cannot, does not, should not constitute a judicial admission. Therefore, given that the odor evidence is that the house didn't smell, although some people reported smelling, and that there should be no judicial admission found, their case, on all aspects of their case, fundamentally falls apart. But let me turn to some of the issues raised. With respect to summary judgment, they have cited, and ABLE counsel over here has cited you, some ER 300 series records. That is their comprehensive statement of fact. In the record also is our controverting statement of fact, where we went through each of those and showed why they were either not admissible or baseless. They raise no admissible basis to rebut the evidence that we put forth to the district court. They also made minimal factual arguments to this court, to the district court, excuse me. They made six arguments in their brief. Each of those was particularly addressed by the district court at ER 8 at SEC of the record. Six arguments. They are arguing that their fundamental failure to comply with local rule 56.1E should be overlooked. But the case law of this circuit and elsewhere is abundantly clear that their failure to comply with a local rule does not excuse that failure. And that the district court should not be reversed on that basis. That's cases such as Orr and Carmen and Zosla. Even, we even argued in our reply brief on summary judgment that if you looked at those six aspects, even taking them as true, they would not meet the burden under substantive Arizona law, which requires sufficient evidence of a mental intent and unreasonable claims handling processing, so that it would be objectively unreasonable. We think none of the evidence rises to that standard. But then turning to each of these aspects, for instance, you've heard that we did not do remediation in this house. Again, we spent $692,000. It was unrebutted that we took a, if it's possibly a spot that they don't like, that they think is urine, we'll take it out. They demanded remediation cease. The record is clear on that. We thereafter spent about nine months investigating, trying to find urine. At the end of that investigation, we concluded using multiple testing, a forensic light source, chemical testing, humidifying the house to try to detect urine odors, things like that, comprehensive testing techniques, there was not urine. And that's why we didn't do any further remediation. There was nothing left to remediate. That's the evidence in this case. They point to some of our testing. They say dogs, we should have used dogs or we should have used gas chromatography. As this panel itself pointed out, the expert testimony was unanimous, that those testing methodologies were not valid or reasonable to use. And thus, as the district court said in its order, how can it be unreasonable, either objectively or from the subjective prong of the Zilich test, not to use those testing devices? In fact, the evidence on summary judgment was that they went ahead, and unbeknownst to us, we found it later, they used gas chromatography, and the result was no evidence of remaining urine residue in this house. They point to some proposed methodologies. Their own expert said it was not a breach of the standard relating to bad faith for us not to use every single one of the proposed methodologies. That can't be a basis of bad faith. The testing we did do, the serological testing, again, was efficacious for degraded urine. There was evidence in the record that the serologist who did the testing, which was the test coming out of Scotland Yard, used by law enforcement agencies across the country, he was confident, based on the sampling plan provided to him, that if there was urine present, it would find it. That was the evidence. That was the information we relied upon in proceeding with that testing. I think it's also important to look at the little snippets that have been argued here that supposedly constitute our bad faith in light of the overall evidence here, in terms of the $75,000, for example, a month we paid in ALE, in terms of the remediation benefits we did provide to these individuals. This company bent over backwards to try to satisfy these insurers. They were told, you have to raise and rebuild my house, even if you can't find any evidence of any urine in this house. And that was not objectively unreasonable. There's been an assertion here today that we denied coverage on the basis that there was no odor problem. Chubb, these two insurance companies collectively, Chubb, never took the position that there absolutely was no odor problem. They said, we cannot substantiate any basis for the odor problem you described. You've insisted it's urine. There's not a basis for that. You've insisted it has to be a singular remedy, raise and rebuild. There's no basis for that. And we are denying only that remedy. Thereafter, we spent more money looking for a possible other source. For instance, water. We did lots of water tests in the house, looking for water problems. We found a lot of problems of water, which shows why it was appropriate to give a water-based instruction during instruction. We talked about judicial admissions. One point there is they never raised the argument below that our statements in the State Court complaint constitute a judicial admission, and I would submit that that argument is waived fundamentally. They say things that we were looking for an excluded cause. But that's a mere allegation. It's a mere conclusion. It does not have an evidentially sufficient basis or any basis. They point to things like ---- Wait a minute. This records something. In the instructions, didn't that get into, quote, excluded cause at the trial, never mind the summary judgment? Sure. They are arguing that the provision of an exclusion-based instruction related to animals, mold, or groundwater should not have been given, and that it constituted a violation of Rule 50. Their Rule 50 motion should have been granted. And our argument there is that there was more evidence of those aspects than there was ever of urine, and that the evidence taken in the light most favorable to the nonmoving party and all reasonable inferences construed therefrom allowed that instruction to be given, especially because it also had an ensuing covered loss provision, and the second instruction was a concurrent proximate cause instruction as well. So there was evidentiary basis for mold, for animals, and for groundwater in this house, allowing the instruction properly to be given. And it had a waiver provision. Oh, excuse me. That did not. I'm sorry. That was late notice. Did I answer your question, Your Honor? I think so. They talk now, and this shows how their appeal is very much different from the case they put on before, that cause is irrelevant, that this is an all-risk policy. But that was never the argument below. Again, the argument below in their first amendment complaint, in their summary judgment motions, in their joint description of their case, look at 1849 to 50, about what was read to this jury what this case was all about, was that this case was about urine. They insisted it was urine, and they said it had to be raised and rebuilt because of the urine. So for them to come in now, I would argue, is another waived argument that cause is irrelevant. And also, again, the evidence did not substantiate the odor problem, so even if you find cause is irrelevant, you would have to find that the jury was wrong in its conclusions. And, again, they put out a note saying, may we visit the house to detect pot for the purpose of detecting odors. I think that suggests that they did not believe the odor evidence that was put on by the Goldbergs in their case. They talk about Mr. Corridan, who was their bad faith expert. And that issue, again, not specifically argued to the district court below, and if reviewed and properly objected to in our controverting statement, shows it was just a series of foundationless allegations and conclusions, which are not sufficient for a party to survive a motion for summary judgment. They had a duty under 56, Rule 56, to put on admissible evidence. They come back again and say, we assisted the contractors. So on one hand, they're saying we committed a judicial admission. But on the other hand, they're saying, well, after that, you assisted the contractors. I think that would show that we weren't terribly assisting the contractors in one sense. That was argued below. It was rejected below, properly so. They don't even argue it on appeal, and yet they make it now. I'd argue that position, that argument is waived. We come to the attorney's fees issue here. There is a six-factor test in the state of Arizona under the associated indemnity, the Warner test. Of those six factors, five, fully five, favored specific indemnity in this case. One of them, the district court said, marginally favors, which was the merit aspect. Under the Arizona's appeal court decision in Moat, cited in the district court's order, the district court had the latitude as to how to weigh those factors. So whether you weigh them five versus six or weigh any of these other ones, I don't think there's any abuse of discretion as these attorney's fees. And they don't take any issue with the actual size because there's no attack on the methodology, the reasonableness of the fees. This provision in Arizona law, assuming everything the district court did correctly and was correct, they could take into account, let's put it, the amount of the award and its possible negative impact on insurance, you know, disputing. There are actually two factors in the associated indemnity test that go exactly to what you're saying. One of them is a specific one, which is an extreme hardship factor. But the Goldbergs never even submitted an affidavit, as they were required to do under Arizona law, to establish any extreme hardship. So there was no financial basis for that, a finding there. And thus, it has to be that we prevailed on that one. The second factor, I think, is a broader issue going to your question, which is whether or not the award would chill future plaintiffs in similar circumstances. And our position there would be this was a unique factual case that we do not think will be replicated anytime soon. In fact, you may search the annals of American jurisprudence and not find a urine case out there. We don't think that this particular case and its factual background will chill any future plaintiffs, especially in light of the other factors, for instance, the settlement factor, where we made offers to buy their house, to pay them substantial amounts of money, an offer of judgment under Rule 68, all rejected. That factor, I think, ties into the chilling aspect, because you have to look to the factual issues in this case versus some speculative hypothetical that future insureds will be. You answered my question. Thank you. If I may turn very quickly to the jury instructions. There were three at issue and only three at issue. One of them is a late notice provision. That instruction was based on an admitted fact, a stipulated fact. It's fact number 14, which was the jury heard both in the cross-examination of Mark Goldberg as well as read to the jury as part of the jury instructions. They now claim that no, I, Mark Goldberg, called my agent back in February, not July, but that's just a factual dispute which was in the province of the jury to hear credibility and decide that issue. If we're going to talk about judicial admissions, when you stipulate to a fact, I would argue that that is a judicial admission. So I don't think there's any problem with the late notice in terms of being given to the jury at all. There's some evidence, certainly sufficient evidence, to support it. There was a waiver aspect about that. If they claim, as they do claim, that we waived our late notice provision, the jury was entitled to find a waiver. To protect property, jury instruction, that is an expressed condition of the policy. Their arguments were so much time had passed. I have a question, unrelated. They asked for a general verdict. I forgot, what was your position? Did you ask for any specific questions? We did, Your Honor. We submitted a very detailed. I thought so. Okay. And they demanded a general, and the district court elected to give a general verdict. Under Arizona law, the district court, I guess it is a Federal question. I never, as a district judge, would have allowed this to go without specific questions. But they asked for the general verdict. And I guess this is all washed out, all these arguments, as long as there's some basis for what the jury's verdict was. I would submit that that response is correct. And I will also admit to my ignorance as to the law as to whether a special versus general verdict has to be given. Finally, there is one issue that is lurking in this record, which is this conditional replacement aspect. I would argue that this Court never need reach that issue at all, if it can affirm the jury verdict. But we think it is absolutely clear. The Goldbergs submitted this issue to the district court, said it need not go to the jury. That's what they said in their initial brief on this. We submitted evidence that they claimed that the house was complete, was false. We submitted over 90 pages of material showing the continuing remodeling activities after they moved back into the house that went on into March and April 2003, so in that policy period. They even said in their state court complaint, I believe also in their First Amendment complaint in this case, and also before another body, the tax assessor body, that the house was not complete at that time. So I don't think that there's any basis for that to be overturned. If I could turn very quickly in the two minutes I have remaining to our cross-appeal, we think our point would be that everything should be affirmed except with a remand of instructions to enter a modified judgment with respect to our cross-appeal, granting us $268,000 approximately. Because of the application of Arizona Rule 68, we think it is clear that Federal Rule 68 does not apply in its face, or we made the offer of judgment and we prevailed at trial. We think that under Supreme Court authority, Delta Airlines, as well as this circuit's authority, MRO Communications, Federal Rule 68 does not apply. We think that the case, the sole case they have cited to support their analysis of CEDIS, simply is inapposite on its face. It's the classic situation where Rule 68 does apply. There is no conflict with Federal law here. State court is a, the statute expressly says it's a sanction. The Arizona Supreme Court has said it's a sanction. Other persuasive authority, we cited the Seventh Circuit's decision in the S.A. Healy case, also shows why state law should be deferred here, to here. And so, A, we should get our Rule 68 Arizona sanctions. I will submit if there's no further questions. I don't think there are any more. Thank you, Your Honors. Thank you, Mr. Traylor. Mr. Goodman. Thank you. Mr. Traylor says that Chubb never took the position there was no odor problem. Excerpt of record 519, Chubb's denial of coverage letter, says that, quote, it is our position that urine deposits have been removed and remediated and are dissipated to the point where they can no longer be detected, end quote. Mr. Traylor says there was no evidence of urine in the house apart from one spot. We have, we're talking about summary judgment here, not substantial evidence at trial. In the summary judgment record, the evidence was at pages 352, 357, 356, 378 to 79, and 710 to 995 of the excerpt of record. As to the judicial admission, at best for Chubb, we think it's a binding admission, at best for Chubb a statement in a complaint that was still pending when they denied coverage is an evidentiary admission. And a court is not supposed to grant summary judgment in the face of controverting evidence showing that there was a serious odor problem in the house at the time Chubb denied coverage. As to the comprehensive statement of facts, Chubb's position is that they objected, that the evidence wasn't admissible. But not only did Chubb not object to everything, the district court didn't sustain Chubb's objections. Chubb did not argue on appeal that the district court abused his discretion. And after the party's completed briefing of this appeal, this court held in McComish v. Benn at 611 F. 3rd at page 520, quote, because the district court did not rule on the party's evidentiary objections and did not strike any evidence from the record, all of the evidence adduced below remains a part of the record before us on appeal, end quote. That means that everything in the comprehensive statement of facts is in play on this appeal. The evidence about the scientific testing in the record is that urine odors are detect, you can smell urine odors even if you can't detect them. And that's the fundamental problem with Chubb's investigation is that they were trying to, their position was we had to find concrete evidence of actual stains rather than odors. The record below had, as I mentioned, 34 different people who attested that the House had very foul urine odors. Chubb also argues that partial payment of claim immunizes it from somber judgment on bad, I mean, immunizes it from bad faith liability. And, again, that's contrary to Arizona law in the Zillage case. And finally, Chubb says that the fee award should be upheld on the ground that there is no evidence of a chilling effect. The record, Goldberg submitted affidavits from two people attesting to a chilling effect of a fee award of the magnitude of the huge, unprecedented $3 million award in this case. Whatever the court does, we ask the court to vacate the fee award. Okay, counsel, we appreciate your argument. The matter just argued will be submitted and the court will stand in recess for the day. All rise.
judges: Trager, Alarcon, Rymer